**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **RAYMOND KELSEY,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **No. CIV-10-1292-D** |
| | ) | |
| **Warden, FCI EL RENO,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**REPORT AND RECOMMENDATION**

Petitioner, a federal prisoner appearing pro se, brings this action pursuant to 28 U.S.C. § 2241, seeking a writ of habeas corpus. United States District Judge Timothy D. DeGiusti has referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Respondent has filed a motion to dismiss, and Petitioner has responded. Thus, the matter is at issue and ready for disposition. For the following reasons, it is recommended that the petition be denied.

By this action, Petitioner challenges the Federal Bureau of Prisons' (BOP) interpretation of the Second Chance Act of 2007 as set forth in an April 14, 2008, memorandum and a BOP program statement. Petitioner states that he is currently housed at the Federal Correctional Institution in El Reno, Oklahoma, but that he was convicted in the Northern District of Iowa of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), stealing an aircraft in violation of 18 U.S.C. §§ 2312-13, and money laundering in violation of 18 U.S.C. § 1956. Petition, 1. Petitioner further contends that he has a projected

release date, minus good time credit, of December 11, 2011. Petition, 1. To properly place Petitioner's grounds for habeas relief in context, the undersigned first provides a brief overview of the statutory framework regarding placement in a re-entry facility as amended by the Second Chance Act of 2007.

## I. STATUTORY FRAMEWORK

Prior to 2008, an inmate's eligibility for transfer to a re-entry facility was limited to the final six months or ten percent of his sentence. Garza v. Davis, 596 F.3d 1198, 1202 (10th Cir. 2010) (citing 18 U.S.C. § 3624(c) (2000)). The Second Chance Act of 2007 amended prior legislation to allow an inmate to become eligible for placement in a residential re-entry center or community corrections center in the final twelve months of his sentence. Garza, 596 F.3d at 1202. It also required that placement in such a facility must be "determined on an individual basis" and be "of sufficient duration to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. § 3624(c)(6)(B)-(C). To aid the BOP in its determination, the statute listed five factors that must be considered when deciding how long an inmate will be placed in a re-entry facility:

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence–

   (A) concerning the purposes for which the sentence to imprisonment
was determined to be warranted; or

(B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b); Garza, 596 F.3d at 1201-02.

Subsequent to the enactment of the Second Chance Act of 2007, the BOP issued a memorandum on April 14, 2008, to provide its staff with guidance "regarding the proper implementation of the amended statutes while BOP was undergoing formal rulemaking to revise more permanently its regulations." Garza, 596 F.3d at 1202. This memorandum discussed, among other things, the new time frame of twelve months for placement in a re-entry facility. Garza, 596 F.3d at 1202; Petition, Ex. 1, at 2. It instructed its staff to review inmates for pre-release placement on an individual basis using the five factors listed above. Garza, 596 F.3d at 1202-03; Petition, Ex. 1, at 3. However, the memorandum also stated:

> While the Act makes inmates eligible for a maximum of 12 months pre-release [residential re-entry center] placements, Bureau experience reflects inmates' pre-release [residential re-entry center] needs can usually be accommodated by a placement of six months or less. Should staff determine an inmate's pre-release [residential re-entry center] placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager."

Petition, Ex. 1, at 4; Garza, 596 F.3d at 1203.

## II. ARGUMENTS

Petitioner alleges that the April 14, 2008, memorandum is not an interpretation of the Second Chance Act of 2007 because it is basically a reiteration of BOP program statement 7310.04(9)(a)(1) which was issued in 1998 and thus predated the Second Chance Act of 2007

by a number of years. Petition, 4. More specifically, he raises the following three grounds for relief: First, he argues that the BOP's interpretation of its discretion under 18 U.S.C. § 3624(c) conflicts with the clear intent of Congress because the 1998 program statement on which the April 14, 2008, memorandum was based was effectively abrogated by the Second Chance Act of 2007. Petition, 7-8. Second, Petitioner claims that since the April 14, 2008, memorandum was a reiteration of the 1998 program statement and not an interpretation of 18 U.S.C. § 3624(c), the BOP violated the Administrative Procedure Act by failing to require the memorandum to go through notice and comment. Petition, 9-10. Finally, Petitioner contends that the decision to limit him to six months in a re-entry facility was arbitrary and capricious because his unit team never made an actual decision regarding his transfer to a re-entry facility. Petition, 10-12.

The Respondent seeks dismissal of the Petition on several grounds. He first argues that the petition is not cognizable under 28 U.S.C. § 2241 because Petitioner is challenging the location rather than the fact or duration of his confinement. Respondent's Motion to Dismiss, 3. Next, Respondent claims that the petition fails to provide a short, plain statement showing that Petitioner is entitled to relief as required by Federal Rule of Civil Procedure 8. Respondent's Motion to Dismiss, 4-5. Third, he contends that Petitioner's claims are moot because he received an individualized determination regarding his eligibility for placement in a re-entry facility. Respondent's Motion to Dismiss, 6-7. Finally, Respondent argues that the issues raised in the petition lack merit for three reasons: (1) the BOP's interpretation of 18 U.S.C. § 3634(c) is consistent with congressional intent, (2) the Administrative Procedure

4

Act's notice and comment requirements do not apply to the April 14, 2008, memorandum because it was an internal agency guideline, and (3) the BOP properly conducted an individualized review in recommending a re-entry facility placement of 150 to 180 days. Respondent's Motion to Dismiss, 7-14.

Petitioner responds that the BOP's interpretation of its discretion under 18 U.S.C. § 3624(c) is not entitled to <u>Chevron</u>[1] or <u>Skidmore</u>[2] deference. Petitioner's Response, 2-8. Petitioner also reiterates his arguments regarding his second and third grounds for relief. Petitioner's Response, 8-15.

## III. DISCUSSION

In his first ground for relief, Petitioner contends that the BOP's interpretation of its discretion under 18 U.S.C. § 3624(c) conflicts with the clear intent of Congress because the 1998 program statement on which the April 14, 2008, memorandum was based was effectively abrogated by the Second Chance Act of 2007. However, the Tenth Circuit has found that the April 14, 2008, memorandum does not conflict with the Second Chance Act of 2007. <u>Ciocchetti v. Wiley</u>, No. 09-1336, 358 Fed. Appx. 20 (10th Cir. Dec. 22, 2009).[3] In <u>Ciocchetti</u>, the inmate alleged that the BOP was categorically denying requests for transfer to re-entry facilities. <u>Ciocchetti</u>, 358 Fed. Appx. at 22. The inmate admitted that he had not

---

[1]<u>Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984).

[2]<u>Skidmore v. Swift & Co.</u>, 323 U.S. 134 (1944).

[3]This and any other unpublished dispositions are cited as persuasive authority pursuant to Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

exhausted his administrative remedies but argued that he should be excused from exhausting on the grounds that the April 14, 2008, memorandum, another memorandum, and anecdotal evidence from staff demonstrated that his attempt to exhaust would be futile. Ciocchetti, 358 Fed. Appx. at 24. The Court found that the inmate misunderstood the April 14, 2008, memorandum and stated that it clearly showed that the BOP was aware of its authority to place inmates in a re-entry facility for more than six months. Ciocchetti, 358 Fed. Appx. at 24. Further, the Court stated that requiring the regional director's approval for placements of greater than six months did not amount to a categorical denial. Ciocchetti, 358 Fed. Appx. at 24. See also Sacora v. Thomas, 628 F.3d 1059, 1065-70 (9th Cir. 2010) (finding that April 14, 2008, memorandum was entitled to Skidmore deference and was a reasonable construction of 18 U.S.C. §§ 3621(b) and 3624(c) and that it was not required to go through notice and comment because it merely provided guidance rather than substantive rules); but see Strong v. Schultz, 599 F. Supp. 2d 556, 563 n.3 (D.N.J. 2009) (April 14, 2008, memorandum was not entitled to Skidmore deference). Finally, the undersigned notes that the BOP issued regulations effective October 21, 2008, which set forth procedures for evaluating an inmate's placement in a re-entry facility, and at least one court has found that the April 14, 2008, memorandum ceased having any legal power after the enactment of the regulations. Velez v. Zickefoose, No. 10-3992 (NLH), 2010 WL 5186158, at *4 (D.N.J. Dec. 15, 2010). Thus, Petitioner's first ground for relief is without merit.

While there are similarities between the 1998 program statement and the April 14, 2008, memorandum, the undersigned finds the memorandum is not simply a reiteration of

the 1998 program statement as Petitioner contends in his second ground for relief. The 1998

program statement states at § 9(a)(1):

> An inmate may be referred up to 180 days, with placement beyond 180 days highly unusual, and only possible with extraordinary justification. In such circumstances, the Warden shall contact the Regional Director for approval and the Chief USPO in the inmate's sentencing district to determine whether the sentencing judge objects to such placement.

Petition, Ex. 3, at 2.[4]

The April 14, 2008, memorandum states that staff should use the 1998 program

statement in determining an inmate's re-entry facility placement, and it specifically reiterates

the requirement that the warden seek the regional director's approval for placements greater

than six months. Petition, Ex. 1, at 2, 4. However, the memorandum also modifies the 1998

program statement's application according to the new requirements in the Second Chance

Act of 2007. In this regard, it requires that inmates be individually considered for pre-release

re-entry facility placement with reference to the five factors in 18 U.S.C. § 3621(b). Petition,

Ex. 1, at 3. And it specifically states, "[S]taff must not view any of the criteria listed in PS

7310.04, especially Sections 9 and 10, or any other policy, as <u>automatically</u> precluding an

inmate's pre-release [residential re-entry center] placement." Petition, Ex. 1, at 4. Further,

the memorandum requires staff to "approach every individual inmate's assessment with the

understanding that he/she is now <u>eligible</u> for a maximum of 12 months pre-release

[residential re-entry center] placement" and states that conflicting sections in the 1998

---

[4]This exhibit does not contain page numbers, and thus, the undersigned has inferred them.

program statement must be ignored. Petition, Ex. 1, at 4. Thus, the April 14, 2008, memorandum was not merely a restatement of the 1998 program statement. Instead, it acted to conform the BOP's existing policy with the new requirements in the Second Chance Act of 2007.

Regarding Petitioner's third ground for relief, the undersigned agrees that this ground is now moot. Article III of the United States Constitution limits the jurisdiction of federal district courts to adjudicating actual "cases" and "controversies." U.S. Const. art. III, § 2; Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60 (1992). For the federal courts to retain jurisdiction over an action, "[a]n actual controversy must be extant at all stages of review." Utah Animal Rights Coalition v. Salt Lake City Corp., 371 F.3d 1248, 1256 (10th Cir. 2004) (quoting Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997)). "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome. The crucial question is whether granting a present determination of the issues offered . . . will have some effect in the real world." Id. (citations omitted) (internal quotation marks omitted). Like other federal actions, "[a] habeas corpus petition is moot when it no longer presents a case or controversy under Article III, § 2, of the Constitution." Aragon v. Shanks, 144 F.3d 690, 691 (10th Cir. 1998).

Petitioner submitted an informal resolution form on April 12, 2010, alleging that a regional directive violated the Second Chance Act of 2007 by limiting his time in a re-entry facility, and he requested that he be considered for twelve months placement in a re-entry facility. Petition, 5, Ex. 4. As such a determination was not set to occur until August 2010,

8

Petitioner's unit counselor responded that the length of his stay in a re-entry facility would be determined at his next regularly scheduled team meeting. Petition, 5, Ex. 4. Petitioner then submitted a request for administrative remedy on the same issue. Petition, 5, Ex. 5. In a response dated June 7, 2010, the warden informed him that after careful review of the relevant factors, his unit team determined that no extraordinary circumstances existed to warrant placement in a re-entry facility for longer than six months, and his request was denied. Petition, 5, Ex. 5. Petitioner notes that this response was issued approximately two months before the time his unit team was to meet. Petition, 5.

Petitioner next submitted a regional administrative remedy appeal raising the same issues and also stating that the warden's response to his request for administrative remedy was "an entire fabrication of the facts" because a determination had not yet been made regarding his placement in a re-entry facility. Petition, 6, Ex. 6. The regional director responded on July 28, 2010, that Petitioner's case was properly reviewed in accordance with the Second Chance Act and the recommendation of six months in a re-entry facility was appropriate. Petition, Ex. 7. Finally, Petitioner submitted a central office administrative remedy appeal, alleging the same issues as raised in his regional administrative remedy appeal. Petition, 6, Ex. 8. Petitioner never received a response regarding this final administrative appeal, and he filed this action on December 1, 2010. Petition, 6, Ex. 9.

As stated above, pursuant to the Second Chance Act of 2007, prison staff are required to consider on an individual basis an inmate's placement in a re-entry facility for up to twelve months. Petitioner submitted documents which show that at the time he was exhausting his

9

administrative remedies, no such individualized placement review had occurred.  However,

he also admitted that such review was set to occur in August 2010.  Petition, 5.  Further,

documents submitted by Respondent show that on or around August 19, 2010, Petitioner's

unit team met and recommended a range of 150 to 180 days placement in a re-entry facility.

Respondent's Motion to Dismiss, Ex. 1, at 3-4.[5]  Since the individualized review Petitioner

has requested has already occurred, his third ground for relief is now moot.  Accordingly, the

undersigned recommends that the petition be denied.

## RECOMMENDATION

For the reasons and to the extent set forth above, it is recommended that the petition

for a writ of habeas corpus be denied.  In light of this recommendation, it is further

recommended that Petitioner's Motion to Expedite Proceedings [Doc. No. 2] and Motion for

Discovery [Doc. No. 3] be **DENIED**.  The parties are advised of their right to file an

objection to this Report and Recommendation with the Clerk of this Court by March 22,

2011, in accordance with 28 U.S.C. § 636 and Federal Rule Civil Procedure 72. The parties

are further advised that failure to make timely objection to this Report and Recommendation

waives their right to appellate review of both factual and legal questions contained herein.

Moore v. United States, 950 F.2d 656 (10th Cir. 1991).  This Report and Recommendation

disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

---

[5]This exhibit does not contain page numbers, and thus, the undersigned has inferred them.

10

**ENTERED** this 2nd day of March, 2011.

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE